### Williams v. Wait.

1. Following the precedents of the territorial supreme court, and for reasons stated, *held*, that an appeal will not be dismissed because taken before the costs and disbursements in the court below are taxed and inserted in the entry of the judgment appealed from.
2. In an action of forcible entry and detainer, to recover possession of leased premises from the tenant after the expiration of his lease, the lease itself, until attacked, sufficiently proves the landlord's title.
3. When a party in possession as owner makes a deed to another, and takes from him a lease of the demised premises, agreeing to pay rent, and to surrender the same upon the expiration of the term, he cannot, in an action by the landlord to recover possession, without first impeaching the validity of the lease, controvert the landlord's title by evidence that he made the deed under the coercion of menace and duress.
4. In order to so dispute his landlord's title, and set up his own against it, he

must first show that he accepted the lease in mistake, or that he was induced to accept it under such circumstances as would justify a court of equity in setting it aside.

5.   The mere fact that the tenant has a better title than his landlord does not alone raise a presumption that the lease was a fraud or accepted by mistake.

(Syllabus by the Court.   Opinion filed June 19, 1891.)

Appeal from circuit court, Lincoln county.   Hon. A. W. CAMPBELL, Judge.

Action in forcible entry and detainer to recover possession of certain real property leased by plaintiff to defendant.   The action was certified from justice court to the circuit court because of the issue of title to the realty in question presented by the pleadings.   A verdict was directed in favor of plaintiff at the close of the trial and judgment was thereupon entered. Defendant appeals.   Affirmed.

The facts are stated in the opinion.

*Joe Kirby,* for appellant.

In an action of forcible entry and detainer involving the homestead, the wife is a necessary party.   R'evalk v. Kramer, 8 Cal. 66; Marks v. March, 9 Id. 97; Mors v. Warner, 10 Id. 297; Clark v. Sherman, 1 Nev. 572; Mabury v. Ruiz, 58 Cal. 11; Dellperry v. Dellperry, 27 Id. 330; § 3, Chap. 39 Pol. Code..

The plaintiff claims right of possession of the premises in controversy as the landlord of defendant.   A husband cannot sign a lease acknowledging a third party as his landlord then commit a breach of the conditions of the lease, and have his wife, by decree of court, removed from the premises.

The plaintiff not having pleaded title, could not give evidence of it.   No loss is shown of any of the deeds, the records of which were offered and received in evidence.   This was error. 1 Green Ev. 558; Howe Mach. Co. v. Stiles, 5 N. W. 577; Hanson v. Ins. Co. 11 N. W. 670; Crowe v. Cappell, 47 Ia. 426.

The deed to the homestead under which the plaintiff claims was signed by the husband under menace of unlawful imprisonment, and was signed by the wife under the menace of the unlawful imprisonment of her husband.   The menace thus proved

was sufficient to avoid the deed. §§ 879, 880, Comp. Laws; Eadie v. Slimmon, 26 N. Y. 9; Harris v. Carmody, 131 Mass. 51; Schultz v. Culbertson, 49 Wis. 122; Schultz v. Catlin, 47 N. W. 946.

It was error for the court to reject the offer of defendant to prove that the deed under which plaintiff claims was never delivered.

*C. B. Kennedy*, for appellant.

A judgment is not perfected and complete so that an appeal will lie therefrom until the costs are taxed and entered in the judgment. § 5189 Comp. Laws; Cord v. Smith, 15 Wis. 211; Below v. Railroad, 53 Wis. 150; Smith v. Hart, 44 Wis. 230. An order for judgment is not final and not appealable. Dickens v. Ladwise, 11 Paige, 191; Williams v. Field, 8 How. Pr. 327.

KELLAM, P. J. This is an action in forcible entry and detainer, certified from justice court on account of the question of title, and tried in the circuit court for Lincoln county. Plaintiff's complaint stated the following facts: That on the 18th day of April, 1888, he leased in writing to defendant certain premises in said county, of which he was the owner and entitled to the possession, for the term commencing on said 18th day of April and ending on the 1st day of November, 1888; that defendant went into possession under said lease; but refused to vacate or deliver possession to plaintiff upon the expiration of his said term, and after due and timely notice to quit was properly served. The lease referred to was set out and made a part of the complaint. The answer of defendant denied generally, except that it admitted the execution and delivery of the lease, but alleged that the defendant was then, and during all the times mentioned in the complaint, the absolute owner in fee and entitled to the possession as such owner of the premises described in the complaint; that said premises were the homestead of himself and wife, and were during all of said time so occupied by them; that said lease was obtained from him wholly without consideration, and that he was induced and compelled by plaintiff to sign the same by means of fraud, menace, and mistake;

that plaintiff represented to defendant that he was the owner of said premises, and that his title was paramount to that of defendant, when in fact he had no title; that plaintiff threatened to commit unlawful and violent injury to the property of said defendant if he failed to sign said lease; and, further, that plaintiff did, by means of fraud and duress, induce defendant and his wife to sign a warrantee deed of said premises to him, which deed was never delivered nor further executed than merely to be signed; that but for the mistake of the defendant as to the legal effect of said deed, and but for said fraud, menace and mistake, he would not have signed said lease. At the close of the testimony the court directed a verdict for plaintiff. A motion for a new trial was overruled, and judgment entered upon the verdict. The judgment is set out at length in the abstract, and concludes as follows: "And that he [plaintiff] have judgment for the costs and disbursements, taxed and allowed at ——— dollars." Defendant appeals from the judgment and the order overruling his motion for a new trial.

Respondent moves to dismiss the appeal on the ground that the judgment below was not in condition to be appealed from when the notice of appeal was served, in that "the costs were not taxed and allowed and entered in the judgment, and the judgment was not complete." The question presented by the motion is simple in itself, but its solution is not free from difficulty. Section 5214, Comp. Laws, gives the right to appeal to any aggrieved party from "any judgment" of the circuit court. Section 5024 defines a "judgment" as "the final determination of the rights of the parties in the action." In this case it is not questioned, or could it be upon the record, but there was a full consideration and determination of all the questions presented by the parties for litigation. The court rendered judgment upon the merits on all the issues in dispute. This by statute entitled the prevailing party to certain costs and disbursements, and in recognition thereof the judgement provides that the plaintiff (the successful party) "have judgment for the costs and disbursements, taxed and allowed at —— dollars." Could the clerk properly enter the judgment in that form, or

should he wait until the costs are taxed? By Sections 5101 and 5102, the clerk is required to keep a "judgment book," and to enter the judgment therein, clearly specifying "the relief granted or other determination of the action." I do not find any statutory provision, as there is in some of the states, fixing any time for the entry of judgment. Section 5095 says judgment "may be entered by the clerk upon the order of the court or the judge thereof." That the judgment may and will be actually entered by the clerk before the costs are taxed seems plainly within the contemplation of the statute. Section 5197 provides that "the clerk must insert in the entry of judgment on the application of the prevailing party, * * * the sum of the allowance of costs, as provided by this Code." This language clearly indicates that the judgment has already been entered, and that the costs are subsequently inserted. The clerk is directed to insert the costs in the entry of judgment, not to adjust and insert the costs, and then enter the judgment. We think that the several provisions of the Code upon the subject contemplate that the entry of the judgment by the clerk will be made prior to the adjustment of the costs. See Gilmartin v. Smith, 4 Sandf. 684. Having entered the judgment, it then became the duty of the clerk, if not furnished by the party or his attorney, to make up and file a judgment roll, and this he shall do immediately after entering judgment. Section 5103. From this event—the filing of the judgment roll—commences to run the two years within which an appeal from the judgment may be taken. Section 5216. Now, if we are correct in our conclusion that the entry of judgment by the clerk is to be made before the costs are taxed, and the judgment roll filed immediately thereafter, as provided in said Section 5103, and the contention of respondent is also correct, that the judgment cannot be appealed from until the costs are taxed and inserted in the judgment, then it would follow that an aggrieved party would not have the time assured him by the statute within which to appeal, but would be deprived of just so much of that time as intervened between the filing of the judgment roll and the taxation of the costs; that is, instead of having two years

within which to appeal, he would have only what was left of
that time after the prevailing party had taxed his costs, for the
appeal must be taken within two years "after the judgment
shall be perfected by filing the judgment roll." We have no
statute, as in Wisconsin, requiring taxation within a limited
time, and no statutory method of compelling the prevailing
party to proceed to such taxation. Nothing would be left to a
party desiring to appeal, under such circumstances, but an ap-
plication to the court to require the prevailing party to tax his
costs. It is true the costs are to be taxed "as a part of the
judgment," but they are a distinct and separable part of it.
"They are regulated by statute, and are an incident or append-
age of the judgment," says the court in Scott v. Burton, 6 Tex.
322. If the judgment of the court gives costs to a party not
entitled to them under the law, that is error in the judgment,
and might be considered, if properly assigned, in an appeal
from the judgment, for that is a part of what the court adjudi-
cated, but the adjustment of the definite amount of the costs
and disbursements is a matter first committed to the clerk.
It is presumably only a matter of computation, and is minis-
terial. If either party is dissatisfied with the action of the
clerk, he may appeal to the court or judge, but we do not un-
derstand that this must all precede the entry of the judgment
by the clerk. Such a ruling would operate as a stay of pro-
ceedings against the prevailing party for an indefinite number
of days, so far as making his judgment available to him as se-
curity for recovery, and as suggested in Stimson v. Huggins, 9
How. Pr. 92, such enforced delay in entering and docketing a
judgment would often entirely defeat the party recovering a
verdict from collecting any portion of it. Ample time would
thus be given to create liens and shifts of property by which
the vigilant creditor might be entirely defeated in obtaining the
fruit of his litigation.

It is distinctly recognized, both in Wisconsin and New
York, where the rule contended for by respondent prevails,
that, as matter of fact,—and that, too, under the plain instruc-
tion of the statute,—the costs are taxed after the entry of judg-

ment, (Stimson v. Huggins, 9 How. Pr. 88; Cord v. Southwell, 15 Wis. 216;) and that such judgment docketed with costs untaxed, is a lien upon real estate.    Considering that the purpose of an appeal is to have reviewed the adjudication of the lower court upon the merits, from which the matter of costs is entirely separate, and that the object of making the judgment a lien upon real estate is to incumber the same to the amount of such judgment, there would seem to be at least as much reason for holding a judgment too incomplete to constitute a lien until the costs are taxed, and the full amount of the judgment and consequent lien definitely fixed, as for holding that such judgment is too incomplete to be appealed for the review of questions having no relation to the matter of costs.    In Richardson v. Rogers, 37 Minn. 463, 35 N. W. Rep. 270, where the Wisconsin and New York rule is adopted by that court, it is said that, as respects the lien of a judgment, the omission to tax and include the costs before docketing is to be treated as an irregularity merely; but is it entirely fair to charge as an irregularity to be excused by the grace of the court, what is plainly and confessedly a literal compliance with the statute?    There are undoubtedly, as remarked by the court in Richardson v. Rogers *supra*, two sides to the question raised by this motion; but influenced somewhat by the foregoing considerations, and possibly more by the desire to follow the precedents of the territorial supreme court, we hold to the rule that an appeal from a judgment will not be dismissed because taken before the costs are taxed and inserted in the entry of the judgment.    We follow Adams v. Smith and Champion v. Board Co. Com'rs, in which memorandum opinions simply were filed, which will appear in 6 Dak., and overrule the motion to dismiss the appeal.

Upon the trial of the case plaintiff offered the record of the final receipt of the receiver of the land office to one Houks, and of the deed from Houks to defendant.    These were admitted over defendant's objection, and their admission is assigned as error.    It was not necessary for plaintiff to introduce these evidences of his title, but there was no error of which defendant can complain in their admission.    Until it was attacked,

plaintiff's lease with defendant was all the evidence of his title or right of possession that he need to furnish; for. as between lessor and lessee. it proved the landlord's title, and his right to possession upon expiration of its term. Besides, the defendant, equally with plaintiff, derived whatever rights he had to these premises from these instruments, and their admission at the instance of plaintiff could do him no possible harm. We do not, therefore, stop to inquire whether or not a proper foundation had been laid for their introduction.

Plaintiff then offered the record of a deed from defendant and his wife to plaintiff, he having testified that he received the deed and delivered it to his attorney, Mr. Kennedy, and Mr. Kennedy, having testified that he procured the deed to be recorded, received it again after its record, it being returned to him at his office, that he had made a careful search for it several times, and could not find it, and .that it was lost. · This was sufficient, under Section 5308 Compiled Laws, to admit the record of the deed as evidence.

Upon his part, and as a defense to this action for possession, defendant offered to show by Lucy A. Waite, his wife, that she was induced to sign the deed from defendant and herself to plaintiff by a threat made by plaintiff that, if she did not do so, he would cause her husband to be arrested and placed in the penitentiary, and that she would not have signed said deed · but for fear that he would carry out said threat. The offer was rejected by the court, defendant excepted, and alleges error thereon. There was no error in this ruling of the court. This was an action to recover possession of the premises described. By the lease defendant had recognized the plaintiff as his landlord, and had undertaken to vacate and surrender the premises to him at the expiration of his term. That the tenant cannot ordinary dispute his landlord's title is too elementary a proposition to support by authorities. But this was a direct attempt in a collateral action to show that the landlord had no title, because he acquired it through fraud or menace. Defendant might have proved, if he could, that the lease itself was so procured, for that would have destroyed its effect as a lease. We

were at first, influenced, perhaps, by the apparent equities of the case, inclined to think that the defendant, not having obtained his possession from plaintiff, or through the lease, would not be bound by the rule, and we should find some authority for such holding (see Tewksbury v. Magraff, 33 Cal. 237; Franklin v. Merida, 35 Cal. 558; Davison v. Ellimaker, 84 Cal. 21, 23 Pac. Rep. 1026;) but the weight of authority is evidently against such view. Mr. Washburn, in his work on Real Property, (5th Ed.) 600, says of it: "But this doctrine has been considerably limited in the court which declared it, and is not sustained by the general current of authority." In Ward v. Philadelphia, (Pa.) 6 Atl. Rep. 263, plaintiff had been in possession from 1874 to 1881 under a deed to him. He then became a party to a lease with the city, agreeing to pay rent, supposing the city's title was better than his own. Afterwards he became satisfied that he had a better title than the city, and refused to pay rent. The city distrained. Upon the trial the dominant question was whether or not Ward was estopped from impeaching his landlord's title. The court held that, while the tenant might show that the lease was obtained through fraud, misrepresentation or mistake, yet the mere fact that the tenant had a better title than his landlord did not raise a presumption that the lease was a fraud or accepted by mistake. The lease was held binding, and the tenant estopped. In Thayer v. Society, 20 Pa. St. 60, the lessee was in possession when the lease was made, and the court says: "If the lessee was in possession at the time the lease was executed, he may, under certain circumstances, be permitted to prove that the land is his own, and thus resist the proceedings to turn him out. This is allowed, because the landlord, if he fails, is not in a worse condition than he was before the lease. In order, however, to give the tenant this right, it is necessary for him to prove that he accepted the lease in mistake, or that he was induced to accept of it by some fraud or misrepresentation. He will be able to avoid the lease by proof of such facts as would entitle him to relief in equity from any other obligation created by deed. See, also, Parrott v. Hungelberger, (Mont.) 24

Pac. Rep. 14; Tyler v. Davis, 61 Tex. 674; Henderson v. Miller, 53 Mich. 590, 19 N. W. Rep. 197; Hawes v. Shaw, 100 Mass. 187; Prevot v. Lawrence, 51 N. Y. 222. As before suggested, it would have been competent for defendant to show that he was induced to make the lease through the fraud or misrepresentation of plaintiff, or under such circumstances as would justify its annulment in equity; for that would have canceled his relation with plaintiff as his tenant, and released him from its obligations; but the offer did not go to the execution of the lease, but to the execution of the deed which preceded it. The evidence, if admitted, would not affect the validity of the lease, but would simply tend to the impeachment of the landlord's title. If the facts covered by the offer had been fully proved, still the lease, afterwards deliberately made with knowledge of the facts,—and there is nothing in the offer to negative such knowledge,—would have been valid and binding, and until impeached would have constituted defendant the tenant of the plaintiff, and as such estopped him from denying his landlord's title. It would have been good evidence directed against the deed, but was not good as against the lease.

Defendant further offered to show by the same witness that a condition upon which said deed was signed by her was that she, with defendant, her husband, should be allowed to occupy said premises one year free of rent. This offer was refused, and is made the basis of appellant's sixth assignment of error. This evidence would have been obnoxious to the same objection as that last considered. While leaving untouched the validity and force of the lease, it sought to undermine the landlord's title. The offer was properly rejected by the trial court.

Appellant's seventh assignment alleges error in rejecting his offer to show that he had a right, under the chattel mortgage referred to in his evidence, to sell the stock. Defendant had testified that he was induced to sign the deed to plaintiff by being accused by him of having unlawfully sold stock covered by this chattel mortgage, and by the threats of plaintiff

that he would cause him to be arrested therefor and imprisoned. The testimony offered was imcompetent, and properly rejected, for reasons already fully stated. The issue was not whether plaintiff had in fact, a good title, but whether defendant had deliberately recognized his title as good, and, by accepting a lease from him, and becoming his tenant, had estopped himself from disputing his title in this form of action. We think, under established rules of law, which we cannot bend to meet the apparent equities of individual cases, he had done so, and that in this action for possession he could only question his landlord's title, after having impeached the lease itself, and thus canceled his obligation as a tenant under it. There being no error in the rulings of the trial court upon the admission and rejection of evidence, there was nothing in the case for the jury, and the court properly directed a verdict for the plaintiff. The judgment of the court below is affirmed.

All the judges concurring.