[No. 10875. Department Two. July 15, 1913.]

## J. H. ALLEN, *Respondent*, v. MIGLIAVACCA REALTY COMPANY, *Appellant*.[1]

APPEAL—REVIEW—FINDINGS. While findings of the trial court on conflicting evidence are of great weight, they are not conclusive on appeal where they are not supported by a fair preponderance of the evidence.

LANDLORD AND TENANT—ESTOPPEL TO DENY TITLE—EXCEPTIONS—FRAUD—EVIDENCE—SUFFICIENCY. While a tenant is not estopped to dispute his landlord's title when induced to accept the landlord through fraud or misrepresentation, the misrepresentation must relate to a matter not equally within his knowledge and must constitute the inducement to the lease; hence representations that the tenant did not own a building which he knew that he did own, being mere expressions of a legal conclusion on facts known to both parties, do not constitute fraud, in the absence of any relation of confidence between the parties; nor does acceptance of a lease under a threat of eviction constitute duress or fraud so as to relieve from estoppel to dispute the landlord's title.

LANDLORD AND TENANT—BUILDINGS OF TENANT—REMOVAL—ESTOPPEL. The tenant's right to remove a building under the conditions of a lease known to him, is waived, where he silently acquiesced in the claim of ownership by the landlord, accepted a new lease thereof, acknowledged such claim of ownership, and paid rent for the full term; and equity will not relieve from his mistake of law in supposing that he could collect the rent paid; since the principle of law was not doubtful and he was not free from blame.

LANDLORD AND TENANT—RENTS—RECOVERY. A judgment for the recovery of part of the rent paid, representing the rental value of a building belonging to the tenant, is not sustained, where the lease made no such segregation, and the amount was greatly in excess of the proportionate value of the building.

JUDGMENT—RES JUDICATA—MATTERS CONCLUDED. The dismissal of actions for conversion for insufficiency of proof is not conclusive of anything except that the defendant did not convert the property.

Appeal from a judgment of the superior court for Kitsap county, Bell, J., entered June 1, 1912, upon findings in favor of the plaintiff, in an action for money paid, tried to the court. Reversed.

[1]Reported in 133 Pac. 580.

*Bryan & Ingle, Chas. D. Fullen,* and *Arthur E. Griffin,* for appellant.

*Jay C. Allen,* for respondent.

ELLIS, J.—Plaintiff, as the assignee of one Louis Morin, seeks recovery of money alleged to have been paid as rent for a building situated on defendant's lot in Bremerton. It is alleged that Morin paid that portion of the rent sued for under the mistaken belief that he did not own the building. Plaintiff, in an attempt to trace Morin's title to the building, introduced a written lease of the lot, dated December 1, 1902, from William Bremer and wife to Elsie Gartner, for the term of three years and nine months, in which the lessee was given the right to "remove any building therefrom after expiration of this lease." November 17, 1904, the lease was assigned by Elsie Gartner to her husband, Charles Gartner, who on the same day assigned it for the benefit of his creditors to John B. Yakey. On March 8, 1905, Yakey assigned the lease to Carrie Smith, and "also the building situated on said premises with right to remove the same under terms of said lease." No transfer from Carrie Smith was shown, Morin testifying that he bought the building from one Benson, stating "three bills of sale were made from the court to Benson and from Benson to me," but he did not know where these written instruments were. Morin further testified that he did not know when he had acquired an interest in the building, but that for sometime prior to Aug. 18, 1908, he was the owner and in possession of it, and held the lot on which it was situated under an agreement to pay Bremer fifteen dollars a month ground rent. On August 18, 1908, Bremer sold the lot "with the appurtenances" to G. Migliavacca Investment Company. Prior to the sale, S. Migliavacca, agent of that company and of the defendant in all the transactions involving these premises, was told by Morin that the building belonged to him. After the purchase of the property Migliavacca exhibited the deed and stated to Morin: "when I

bought this property I bought everything and nothing was reserved," and that Morin would have to pay fifty dollars a month rent or "get out." Thereupon Morin accepted a lease from the G. Migliavacca Investment Company. It was signed October 1, 1908, and recited the lease of,

"The building known as No. 312 Washington Street in said town of Bremerton, and the real estate and the premises on which the same is located together with the appurtenances thereunto pertaining, for the term of two years from and after the first day of October, A. D. 1908, at the monthly rent of $50 per month, payable monthly in advance on the first day of each and every month during the period of this lease."

It is provided that the lessee may make any improvement or changes in the building, but that same is to be done at his expense and he is to permit no liens to be filed against the building; and that,

"All improvements, changes or alterations made by the lessee in said building or in said premises shall, at the expiration of this lease  .  .  .  become and remain the property of said lessor and shall not be removed from said premises by the said lessee."

It is further stipulated that,

"At the expiration of the terms of said lease  .  .  .  the said lessee will quit and surrender the said premises in as good state and condition as they now are or may be at any time placed in by the lessor or lessee ordinary wear and tear by the element or fire excepted."

Morin stated that he made no objection to signing the lease, "because," as he stated, "somebody else wanted the place and so I had to get out or pay the fifty dollars." On January 18, 1909, the G. Migliavacca Investment Company sold the lot "with the appurtenances," to Migliavacca Realty Company, the defendant in this action. Thereafter Morin continued to pay rent under the lease at the rate of $50 a month to the defendant until December 1, 1910, and it is to recover the amount paid in excess of $15 a month during that

period that this action is brought; the action being based upon the theory of an express agreement that $15 monthly was paid for "ground rent" and $35 monthly for the rent of the building.

Prior to the bringing of this action, Morin brought suit against Bremer for the value of the building, alleging that Bremer had sold it to the Migliavacca Investment Company. Verdict was rendered in Morin's favor, but a judgment notwithstanding the verdict was sustained by this court upon the theory that, if the building belonged to Morin, Bremer could not and did not sell it, and that Morin had the right to remove the same during his occupancy of the premises. *Morin v. Bremer*, 61 Wash. 62, 111 Pac. 1058. Thereafter, and prior to the bringing of this action, Morin brought two actions, one against the Migliavacca Investment Company, and the other against the Migliavacca Realty Company, for the value of the building, alleging a conversion thereof. The answer in each action was a denial generally of the allegations of the complaint, and the judgment recited the sustaining of a demurrer to the sufficiency of plaintiff's evidence made at the close thereof. This is all that appears in the record to indicate the issues upon which those causes proceeded and were determined.

The findings of the court may, for covenience in discussion, be condensed and grouped as follows: (1) that Morin was the owner of the building; that the Migliavacca Investment Company was apprised of this fact before the purchase; that Bremer had refused to sell it to that company; that, after obtaining a deed to the lot "with the appurtenances," the investment company exhibited the deed to Morin, claimed to have purchased the building and told him that if he did not pay $50 a month rent he would be ousted; and that the defendant, Migliavacca Realty Company, had notice and knowledge of Morin's claim and was not a *bona fide* purchaser of the building. (2) The court also found that Morin, believing these representations, entered into and signed the

lease; that the representations were false; and that, but for the representations, Morin would not have agreed to pay rent for the building; that, of the rent so paid, the sum of $785 was collected by the defendant for the use and occupation of the building, and was paid by Morin "in ignorance of his true rights and in reliance on the representations so made to him." Judgment was entered accordingly, and the defendant has appealed.

The case is here for a trial *de novo*, and it is incumbent upon us to determine whether the evidence supports these findings. We are not bound by them as we would be by a verdict of a jury if supported by any evidence. The findings of the trial court upon conflicting evidence are entitled to great weight, but when we are convinced that they are not supported by a fair preponderance of the evidence, it is our duty to disregard them. *Dougherty v. Soll*, 70 Wash. 407, 126 Pac. 924.

In pursuance of this rule, we have made a painstaking examination of the evidence, and we are satisfied that the first group of facts found as above condensed is fairly sustained. As to the second group, we are forced to a contrary conclusion. To sustain this action the respondent assumed the same burden of proof that would have rested upon Morin had the action been prosecuted by him. That a tenant is usually estopped to deny his landlord's title, regardless of the validity of that title, is law so familiar as to require no citation of authority. But this rule is subject to the well-recognized exception that, where the tenant in possession is induced to accept another as his landlord through the fraud or misrepresentation of such other, the estoppel to deny the landlord's title will not be effective. 18 Am. & Eng. Ency. Law (2d ed.), 416. It is upon this exception that the respondent is forced to rely. But the fraudulent misrepresentation, to be available in this relation, must be so established and must be of such nature and made under such circumstances as would make it available in avoiding a written contract in other re-

lations. Where, as here, there exists no confidential or fiduciary relation, the misrepresentation must relate to a matter not equally within the knowledge of or not equally open to inquiry by the party asserting the fraud. The representation must constitute the inducement to the lease. It must have been believed and relied upon by the party to whom it is made and must have actually deceived him to his injury. These things must be established by a preponderance of the evidence, in order to overcome Morin's estoppel to deny the investment company's title and right to make the lease growing out of his acceptance of the lease of October 1, 1908. Smith, Law of Fraud, § 260.

The evidence signally fails to meet these requirements. There was no confidential relations existing between the parties. Morin knew that he owned the building and knew that Migliavacca knew it. Morin testified that he had told Migliavacca so prior to the purchase and that Migliavacca said he so understood. Morin knew that the lease under which he was in possession when the Migliavacca Investment Company bought the land gave him the right to remove the building. He testified that such was also Bremer's agreement with him. He not only knew the fact, but knew his rights by reason of the fact. He knew that he owned the building and that he had the right to remove it. Yet, throughout the whole negotiations with Migliavacca, he never once offered to remove the building or expressed any desire to remove it. On the contrary, he testified that he never at any time made any effort or took any step in that direction, and admitted that he had no place to which to remove it. There is no evidence that Migliavacca ever at any time, either before or at the time the lease of October 1, 1908, was signed, prohibited the removal of the building. The nearest approach to such an inference is found in Morin's statement, elicited by repeated objections of his counsel suggesting the answer, which was at most a mere conclusion, that he, Morin, could not move the building as Migliavacca told him he, Migliavacca, was

the owner. In this same connection Morin testified that at the time he signed the lease he did not make any claim to ownership of the building. He also stated at that time he made no objection to the terms of the lease but had made objections before. What those objections were he did not say. When asked if it was not his motive when he signed the lease to raise no question as to his ownership of the building but to bring suit against Bremer and get something for the building without removing it, he evasively answered: "At the time I signed the lease there was not a word said about anything else." Though he claimed to have signed the lease in reliance upon Migliavacca's representation that the company had bought the building, he also said that he signed it upon advice of his then attorney, Crawford. Though Crawford testified that Morin was mistaken in this, it certainly negatives the idea of such reliance. Moreover, he had no right to so rely in the face of his own knowledge that he owned the building and was' in possession of it. Giving full credence to all of Morin's testimony on the subject, Migliavacca's representations, when he exhibited the deed to Morin and claimed the building because the deed contained no reservations, amounted only to a misrepresentation as to the legal effect of the deed. It was a mere expression of a legal conclusion on facts known to both parties. In short, it was a mere expression of opinion. This does not constitute fraud in the absence of any relation of confidence between the parties. Smith, Law of Fraud, § 14. So far as the record shows, Morin made no inquiry of Bremer, the other party to the sale. It seems to us that Morin's own testimony is hardly capable of any other construction than that he knew he had the right to remove the building so long as he remained in possession under the lease from Bremer, and on the expiration of that lease and the termination of the continued tenancy from month to month; yet, rather than remove the building and thus lose the location, he deliberately determined to forego that right and pay a rental of $50 a

month. It is most difficult to see by what show of right he could leave his building upon the appellant's land and claim its rental value. It was certainly not incumbent on the appellant to remove the building in order to avoid such result. Nor does the fact, if it be a fact, that Morin was induced to accept the lease under a threat of eviction, constitute either duress or fraud so as to relieve him from the estoppel to dispute the landlord's title or right to make the lease. *School District of Harrisburg v. Long* (Pa.), 10 Atl. 769; *Hockenbury v. Snyder*, 2 Watts & Serg. (Pa.) 240; *Andrew v. Carlile*, 4 Colo. App. 336, 36 Pac. 66; *Williams v. Wait*, 2 S. D. 210, 49 N. W. 209, 39 Am. St. 768.

Much argument is devoted to the effect of the decision in *Morin v. Bremer, supra,* as *res judicata* on the one hand, and to the dismissal of the actions for conversion brought by Morin against the two Migliavacca companies as having the same effect on the other hand. In *Morin v. Bremer,* it was merely decided that Morin, as the owner of the building, had the right to remove it and that it could not be sold by Bremer so long as Morin was in possession under the lease from Bremer or its extension from month to month. It is *res judicata* as to nothing more. The two actions for conversion were dismissed for insufficiency of proof. What the proof was, does not appear. Their dismissal can hardly be held conclusive of anything except that the appellant had not converted the building. These decisions have no bearing on the present action other than as tending to show that Morin persistently mistook his remedy in failing to remove the building.

We find no merit in the suggestion that the lease was made under such a mistake of law as to relieve against the estoppel to deny the right of the Migliavacca Investment Company to make it. The remedy by removal of the building was obvious, being pointed out by the very lease under which Morin claimed and by the agreement with Bremer under which Morin remained in possession up to the time of the sale. His mistake in supposing that he could, with full knowledge of his ownership

and possession, silently acquiesce in another's assumed owner-
ship of the building, lease it from the other by a lease ac-
knowledging the other's title, pay the rent for the full term
and then recover the rental paid after having remained silent
all the while, was an inexcusable mistake.  Though it has
been sometimes held that equity will relieve against a mistake
of law, it is only where the principle of law is confessedly
doubtful and when the party seeking relief is wholly innocent
of blame.  *MacKay v. Smith*, 27 Wash. 442, 67 Pac. 928.  -
We have been cited to no authority, and a diligent search
convinces us there is none, which holds that when one, knowing
the facts and knowing his rights, waives his obvious remedy
þy a solemnly executed lease, under the mistaken supposition
that he can invoke another remedy, will be relieved from the
obligations and estoppels of his lease by reason of such mis-
take.

The judgment is erroneous in any event.  The action was
for the return of an alleged agreed rental of $35 a month
paid for the building.  There was no sufficient evidence of
such an agreement.  The unambiguous written lease made no
such provision.  While Morin testified that, of the $50
monthly rent reserved for the premises, $15 was ground rent
and $35 for the rent of the building, Migliavacca denied this
and Morin himself contradicted it when he said that, when the
lease was made, nothing was said about the building.  More-
over, the evidence showed that, when the lease was made, the
lot was worth $3,500 and the building was worth only $900.
That is the amount Morin claimed as the value of the building
in each of the actions for conversion and also in his action
against Bremer.  It is unbelievable that either Morin or
Migliavacca, had they intended a segregation, would have
thought of so inequitable a division.  There was no evidence
of the actual rental value of the building aside from the lot.
Even if the fraud were conceded, the evidence would not sus-
tain the judgment.

It is impossible to sustain this judgment upon any sound theory. It is reversed, and the cause is remanded with direction to dismiss.

FULLERTON, MAIN, and MORRIS, JJ., concur.